**William H. COATES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 15203.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 12, 1959.

Decided Dec. 10, 1959.

Bastian, Circuit Judge, dissented.

Mr. Richard Arens, Washington, D. C.,
with whom Mr. Rufus King, Washing-
ton, D. C. (both appointed by this court)
was on the brief, for appellant.

Mr. John Philip Smith, Asst. U. S.
Atty., with whom Messrs. Oliver Gasch,
U. S. Atty., and Carl W. Belcher, Asst.
U. S. Atty., were on the brief, for appel-
lee.

Before FAHY, DANAHER and BASTIAN,
Circuit Judges.

DANAHER, Circuit Judge.

Appellant pro se sought relief under
28 U.S.C. § 2255. Without a hearing his
motion was denied with a notation by the
District Judge: "The court finds and
certifies that the motion and the files and
the records of the case conclusively show
that the prisoner is entitled to no relief.
The motion is therefore denied." His
petition in the District Court to proceed
on appeal in forma pauperis was likewise
denied. We allowed an appeal and ap-
pointed counsel.

28 U.S.C. § 2255 reads in pertinent
part:

> "Unless the motion and the files
> and records of the case *conclusive-
> ly show* that the prisoner *is entitled
> to no relief*, the court *shall* cause no-
> tice thereof to be served upon the
> United States attorney, *grant a
> prompt hearing* thereon, determine
> the issues and *make findings of fact*
> and conclusions of law *with respect
> thereto*." (Emphasis added.)

The verified motion shows that the ap-
pellant was under the influence of drugs
when he entered a guilty plea. The Dis-
trict Judge, made aware of the facts at
the time, ordered an examination by a
medical official. We will later refer to
his report.[1]

---

[1] In fairness to the District Judge who in
the later proceeding denied § 2255 re-
lief, it should immediately be noted that
the Government's "opposition" to appel-
lant's motion made no mention whatever
of the fact that the doctor's report
showed that the prisoner "will soon be-
gin to suffer from symptoms of with-
drawal from drugs." The doctor recom-
mended hospitalization. See the report,
infra note 3.

Dr. Griffin, Chief of the Legal Psychiatric Services Division, with offices here in the Court House, by order of court had examined the appellant on January 8, 1957. He found that appellant was a user[2] of drugs who had last used drugs at 9:15 that morning. At 11 a. m. he was still "mildly under the influence of narcotics." The doctor stated as his opinion that he was *then* well enough in control of his faculties to be able to understand the proceedings, to assist counsel and to plead to the charges. Had appellant been arraigned then and there, we might have had a very different problem.

But appellant was not then arraigned. Some time after the medical examination, apparently several hours later, appellant was again presented to the court, and that lapse coupled with all other facets of this case creates the basis for our present action. We cannot tell—nor does the record disclose how the files or any material to be found therein could demonstrate *"conclusively"* that appellant was entitled to no relief. Thus the clear command of the statute required that a hearing be held.

At the commencement of the proceeding on January 8, 1957 when appellant appeared to change his plea, the judge (now deceased) was advised by appellant's counsel that he and his client had previously agreed with the Government on a guilty plea to one count of the indictment. But, it was added, the prisoner had appeared in court that morning, apparently about 10 a. m., under the influence of narcotics. Counsel wished to have the judge commit the appellant to a hospital for treatment so that "he cannot come back and say he did not understand." The judge asked if the appellant talked "intelligently." Thoroughly experienced counsel replied "I have talked to people under the influence of narcotics and I think he is."

Obviously in doubt as to how to proceed, as the record reveals, the judge described appellant as "hopped up," and so decided to ask Dr. Griffin to "see if he is sufficiently conscious to enter a plea."

Dr. Griffin's report[3] showed that the prisoner would "soon" begin to suffer withdrawal symptoms. How soon was "soon"? What are "symptoms of withdrawal from drugs"? How are they manifested? What is their effect? That they were to intensify as time went on is clear. The "symptoms will reach their maximum in about 24 hours," the doctor advised the court. He even recommended hospitalization during the withdrawal period, as appellant's counsel had asked.

2. He had twice previously been convicted of violations of the narcotics laws.

3. The report in full reads:
"January 8, 1957
"Legal Psychiatric
"Services Division
"Room 6421
"U.S. Courthouse
"Washington 1, D. C.
"Re: Williams H. Coates
"Colored - Male
56 Years old
Crim. 992–56
"Honorable Bolitha J. Laws
"Chief Judge
"United States District Court for the
"District of Columbia
"My dear Judge Laws:
"In accordance with Your Honor's order of this date, I conducted an examination of the above-named William H. Coates.

"As a result of that examination, it is my opinion that the said William H. Coates is a user of narcotic drugs, that he last used such drugs about 9:15 a.m. today and that he was, about 11:00 a.m., mildly under the influence of narcotics. It is my opinion, however, that he is well enough in control of his faculties to be able to understand the proceedings against him, to assist in his own defense, and to plead to the charges pending against him.
"It is my further opinion that he will soon begin to suffer from symptoms of withdrawal from drugs and that these symptoms will reach their maximum in about 24 hours. From a medical viewpoint, therefore, he should be admitted to a hospital for treatment during this withdrawal period.
"Respectfully submitted,
"Thomas E. Griffin, M.D., Chief,
"Legal Psychiatric Services
"TEG:ta"

Dr. Griffin was not called to explain his findings and conclusions. When the appellant some hours later appeared to enter his plea, the judge queried him as to his understanding.[4] The plea was accepted and the appellant was committed. Dr. Griffin's original report was sent to the jail with the judge's recommendation that hospitalization be afforded. Two months later appellant was sentenced, no attempt to withdraw the plea having been made, as the Government points out. It is further emphasized that the section 2255 motion was not filed until October 30, 1958.

As to the Government's first point, just why appellant's retained counsel did not move to withdraw the plea of guilty, we do not know. Perhaps he wished to abide by his earlier agreement to enter a plea of guilty to one count when two other counts were being dismissed. Perhaps he had satisfied *himself* that his client had obtained as great an advantage as he was entitled to receive. Perhaps he thought his client had fully understood and was competent to enter the plea when it was offered. Suffice it to say that the issue *here* is the one raised by appellant's verified motion, namely that he was under the influence of drugs and did not understand. As to the second point, the delay of sixteen months in seeking relief, the statute says the motion for such relief may be made at any time.

The plain fact is that a thirty minute hearing on the allegations of the motion might have cleared up all misapprehension. Dr. Griffin, perhaps the appellant's counsel on January 8, 1957, and possibly others could have testified. If the appellant failed[5] to show that the plea had not been validly and competently made, that would have ended the matter, for the appellant would have been entitled to no relief. On the other hand, if not validly and competently made, the Government was not entitled to the plea. The only way to have resolved the issue was by a hearing after which the facts could have been found and applicable conclusions of law could have been made.

We reverse to the end that appellant now receive the hearing contemplated by section 2255.

Reversed.

BASTIAN, Circuit Judge (dissenting).

Appellant was indicted on September 24, 1956, for violation of the narcotics laws. On January 8, 1957, with able and experienced counsel of his own choosing, appellant appeared before the late Chief Judge Laws to plead guilty.[1] Due to statements made to the court by his counsel, Chief Judge Laws directed that a medical examination be made by Dr. Thomas E. Griffin with regard to appellant's competence to plead. Dr. Griffin was then, and is now, not only a well known psychiatrist but also Chief of the Legal Psychiatric Services, D. C. Department of Welfare, attached to the District Court, and in charge of the drug addict probationary program in the District of Columbia. In his report, made the same day, Dr. Griffin stated that it was his opinion that appellant was "well enough in control of his faculties to be able to understand the proceedings against him, to assist in his own defense, and to plead to the charges pending against him." It is true that Dr. Griffin further stated in his report that appellant would "soon begin to suffer from symptoms of withdrawal from drugs and that these symptoms [would] reach their maximum in about 24 hours."

4. The inquiries put to the appellant by the judge seem to us to have fallen far short of that "penetrating and comprehensive examination of all the circumstances" which this situation required. Cf. Von Moltke v. Gillies, 1948, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed 309, and Fed.R.Crim.P. 11, 18 U.S.C.

5. Cf. Edwards v. United States, 1958, 103 U.S.App.D.C. 152, 256 F.2d 707.

1. Appellant had been released on bond and had been out on bond from September 28, 1956, to the date of his plea.

Upon receipt of the report, the trial court made the following inquiries of appellant, who again was accompanied by his counsel:

"The Court. Mr. Coates, your counsel has explained to you what this is about, has he?

"The Defendant. Yes, sir.

"The Court. And you are fully familiar with what you are pleading guilty to, is that right?

"The Defendant. Yes, sir.

"The Court. And the doctor has been over you today and he says that you have had some narcotics but that he thinks you know perfectly well what you are doing. You do?

"The Defendant. Yes, sir.

"The Court. You understand everything that is going on?

"The Defendant. Yes, sir.

"The Court. And you are, therefore, pleading guilty to Count 9 which charges you with violation of the narcotic laws because you are guilty and for no other reason whatever?

"The Defendant. Yes, sir."

The plea of guilty was thereupon accepted and the matter referred to the probation officer of the court for presentence investigation.[2] After the report of that investigation, and on March 8, 1957, two months after his plea, appellant appeared for sentencing, at which time he was represented by counsel. There was no statement at this appearance, either by appellant or his counsel, relating to appellant's mental capacity. Nor was any statement made that he was under the influence of narcotics or otherwise mentally incapable at the time of his plea. The following inquiries were made of appellant and his counsel at the time of the sentencing:

"Mr. Allder [appellant's counsel]: * * * I know Your Honor has a full report from the Probation Office before you. This defendant stands before Your Honor after having entered a plea of guilty to one count of selling narcotics. He has a previous record. The only thing I can say to Your Honor is that my information of what happened in this particular instance is it was not a large thing. It was one sale only, one transaction. Even though there were other counts, they were describing the same act, violating the statute in a different manner and he was a user of narcotics at the time. I ask Your Honor to consider those things, his age and that he has been incarcerated now since January 8th, the day that he pled guilty before Your Honor.

"The Court: Would you like to say anything?

"The Defendant: No, Your Honor.

"The Court: As you know, there is a mandatory minimum in this case and, because of your record, I have no alternative but to give you a lengthy sentence. I will make the minimum as low as I can, taking into account you pleaded guilty and also the time you have been in jail. The sentence of the Court is from three to twelve years and a $100 fine.

"Mr. Stevas [Government's attorney]: If Your Honor please, I believe there are other counts in this indictment that should be dismissed and I move to dismiss those at this time.

"The Court: Move (sic) to dismiss the remaining counts is granted."

On October 30, 1958, more than a year and a half after sentencing, the motion

---

2. Undoubtedly, as is the invariable practice of the Probation Officer, he interviewed appellant, who was then in jail and so unable to obtain narcotics. Also undoubtedly, the Probation Officer was well able to see and observe appellant's condition, and would have reported any disposition on appellant's part to change his mind as to his plea.

**518**

under consideration, to vacate sentence, was filed. Insofar as the record shows, this was the first claim that appellant was incompetent to have his plea taken.

It seems clear to me that "the motion and files and the records of the case conclusively show that the prisoner is entitled to no relief."[3] Hence my dissent.

---

3. The majority comment on the fact that Chief Judge Letts, who denied the motion to vacate sentence, may not have had before him the entire report of Dr. Griffin and the full transcript of the two hearings before Chief Judge Laws. Even

assuming that to be the case, it can make no difference here. We do have these materials and they demonstrate, at least to my mind, the correctness of Chief Judge Letts' ruling.