**David L. HANSFORD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19436.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 9, 1966.

Decided July 6, 1966.

Petition for Rehearing En Banc
Denied Oct. 14, 1966.

---

Mr. Joseph F. Hennessey, Washington, D. C. (appointed by this court), for appellant.

Mr. Charles A. Mays, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and William C. Weitzel Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER and WRIGHT, Circuit Judges.

BAZELON, Chief Judge:

Appellant, after waiving jury trial, was convicted of a federal narcotics violation. His defenses were entrapment and insanity. After hearing extensive evidence on both defenses, the trial court resolved the factual issues against appellant and sentenced him to five years' imprisonment, "strongly" recommending his assignment to the federal narcotics center at Lexington, Kentucky.[1] Appellant's principal contention on appeal is that entrapment was shown as a matter of law. We find no merit in this argument.

This case, however, presents yet another facet of the recurring problem of a defendant's competence to stand trial. Several months before trial, appellant, who had a life history of narcotic use and addiction, was committed to Saint Elizabeths Hospital for a 60-day mental examination. He suffered withdrawal symptoms when his narcotics supply was cut off at the beginning of his commitment. He was then diagnosed as "without mental disorder and drug addiction in remission." The Hospital, without referring to appellant's narcotic problem, reported that he was competent to stand trial, and the District Court so determined without conducting a hearing. Appellant was released on bail following his mental examination and soon resumed his use of narcotics. At trial he took the stand in his own defense and admitted that he had been using narcotics throughout the trial, even during the lunch recess that very day. The judge thereupon revoked appellant's bond and had the jail notified that he "may be subject, possibly, to withdrawal symptoms." The trial was

---

1. The trial court showed a particularly sensitive concern regarding the effects of appellant's narcotic addiction on his insanity defense and on the issue of sentencing and place of detention.

922

concluded the next day without inquiry whether appellant was undergoing a withdrawal reaction. At no time either before or during trial did appellant request a hearing on his competence to stand trial.

Current medical knowledge indicates that use of narcotics often produces a psychological and physiological reaction known as an acute brain syndrome, which is a "basic mental condition characteristic of diffuse impairment of brain tissue function." The characteristic symptoms of the syndrome are impairment of orientation; impairment of memory; impairment of all intellectual functions including comprehension, calculation, knowledge and learning; impairment of judgment; and lability and shallowness of affect.[2] A court-appointed psychiatrist testified at trial that he had examined appellant on several occasions subsequent to his mental examination at Saint Elizabeths and found him *under the influence of narcotics.* During these interviews appellant gave "fairly classical evasive answers * * *. When you start to press the patient a little, he began to get somewhat disturbed and he began to show very, very poor judgment." He "began to become much more disorganized * * * and he began to show memory defects, and these memory defects were picked up in an insidious manner." The doctor concluded that appellant's use of narcotics had produced an acute brain syn-

drome, a mental disorder whose characteristic symptoms appellant exhibited. "[A]lthough there was a general degree of orientation * * * where you have to use some type of memory recall in addition to some degree of orientation, the patient was grossly impaired." This testimony was corroborated in many respects by the Government's expert witness who, although he had never examined appellant when under the influence of narcotics, stated generally that use of narcotics could and often did produce an acute brain syndrome and recited the classical symptoms of that disorder.[3]

■ That a narcotics-induced acute brain syndrome may affect a defendant's competence to stand trial is readily apparent. According to the Supreme Court, the test of competency

must be whether [the accused] * * has sufficient present ability to consult with his lawyer with a reasonable degree of *rational* understanding— and whether he has a *rational* as well as factual understanding of the proceedings against him.[4]

Subsumed under this formulation is the requirement that the defendant's memory and intellectual abilities, which are crucial to the construction and presentation of his defense, must not be substantially impaired by mental disorder.[5] Yet it is these very mental faculties

2. American Psychiatric Ass'n, Diagnostic and Statistical Manual: Mental Disorders 14–15 (1952). See Noyes & Kolb, Modern Clinical Psychology 86–87, 142–45 (6th ed. 1963); President's Advisory Committee on Narcotic and Drug Abuse, Final Report 1 (1963).

3. Both witnesses analogized a narcotic-induced acute brain syndrome to the symptoms of intoxication caused by alcohol. See, *e. g.,* Maurer & Vogel, Narcotics and Narcotic Addiction 82 (2d ed. 1962) [hereinafter cited as Maurer & Vogel].

4. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (empha-

sis added). This test, in our opinion, is equivalent to the standard set forth in D.C.Code § 24–301(a) (1961): " * * * that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense. * * *"

5. See, *e. g.,* United States v. Sermon, 228 F.Supp. 972 (W.D.Mo.1964); Judicial Conference of the District of Columbia Circuit, Report of the Committee on Problems Connected With Mental Examination of the Accused in Criminal Cases, Before Trial 121–22, 124, 131–32 (1965).

which the acute brain syndrome caused by narcotics most affects.[6]

Subsequent to the trial in this case, the Supreme Court considered a somewhat similar problem in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966). There a state-court criminal defendant never requested a competency hearing. At trial, however, the defendant presented an insanity defense, and produced several lay witnesses who testified to his various bizarre acts and irrational behavior. The Supreme Court first declared that trial and conviction of an incompetent defendant constituted a denial of a fair trial. The Court then ruled that evidence raising a substantial doubt regarding the defendant's competency imposed a constitutional duty on the trial court to conduct, on its own motion if the defendant failed to request it, an inquiry into the defendant's competence to stand trial.[7]

■■ We believe the record in this case demonstrates, as did that in Pate v. Robinson, a sufficient likelihood of incompetence to have imposed on the trial court a duty to inquire into appellant's competency. This is not, of course, to say that a defendant under the influence of narcotics is necessarily incompetent. Narcotic use does not invariably produce an acute brain syndrome, nor is every syndrome of the same degree of severity. The effects of narcotic use will vary depending on the amount of drugs taken, the degree of tolerance developed by the individual, and the idiosyncratic reaction of the person to the drugs. For this very reason, only by a hearing can it be determined whether any particular defendant is incompetent because of his use of drugs.[8]

■ We also believe that a competency hearing is constitutionally required if it appears that a defendant may be suffering from withdrawal symptoms during trial. Withdrawal is a recognized medical illness. Its effects typically include various physical reactions such as perspiration, waves of gooseflesh, muscle twitch, body aches, hot and

6. See, e. g., authorities cited in note 2 supra. Cf., e. g., PRESIDENT'S AD HOC PANEL ON DRUG ABUSE, PROGRESS REPORT 16–21 (1962); JOINT COMMITTEE OF THE AMERICAN BAR ASS'N & THE AMERICAN MEDICAL ASS'N ON NARCOTIC DRUGS, INTERIM AND FINAL REPORTS 36–42 (1961).

Another very common symptom of heroin or morphine use is that the user experiences a feeling of euphoria and a concomitant reduction in anxiety and tension. See, e. g., PRESIDENT'S AD HOC PANEL ON DRUG USE, PROGRESS REPORT 20 (1962); MAURER & VOGEL 60–61, 73–74. The drugs therefore might lower the * * * tensions that are actually healthy and perhaps essential for proper participation in an adversary court proceeding. A euphoric feeling may impair the ability of the accused meaningfully to assist his counsel. JUDICIAL CONFERENCE OF THE DISTRICT OF COLUMBIA CIRCUIT, REPORT OF THE COMMITTEE ON PROBLEMS CONNECTED WITH MENTAL EXAMINATION OF THE ACCUSED, IN CRIMINAL CASES, BEFORE TRIAL 122 (1965).

7. All nine justices agreed to these constitutional propositions. The dissent of Justices Harlan and Black was based on their view that the evidence at trial was insufficient to raise a substantial doubt as to the defendant's competence. See 383 U.S. at 387–391, 86 S.Ct. 836, 15 L.Ed.2d 815.

Pate v. Robinson is but one of the most recent cases reflecting the Supreme Court's increasing concern during the last decade with the constitutional dimensions of the problem of competence to stand trial. See, e. g., Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582 (1955), rev'd per curiam, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Dusky v. United States, supra note 4; Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). Cf. Rees v. Peyton, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966).

8. The hearing, of course, need not be a lengthy and involved proceeding. However, as a minimum we think the inquiry must be of record and both parties must be given the opportunity to examine all witnesses who testify or report on the accused's competence. The trial court would not be free to base its decision on material not in the record or on private conversations with doctors who had examined the defendant.

cold flashes, restlessness, sleeplessness, nausea, vomiting, and diarrhea. The subject is in extreme physical misery. He may try to withdraw within himself, or may exhibit highly individualized patterns of anxious and irrational behavior, such as becoming quite antagonistic, threatening suicide, assuming bizarre postures, or exaggerating his distress in dramatic ways, often as a purposive attempt to obtain drugs.[9] These physical and psychological symptoms of withdrawal could very well render a defendant incompetent to stand trial. He may be physically incapacitated from following the evidence or from discussing it with counsel, or he may be so preoccupied with his real or imagined suffering as to lose all interest in his case and desire only that it end as quickly as possible. Inquiry and a determination that the defendant is in fact competent therefore seems a prerequisite to the conduct or continuation of a fair trial.

█ The trial judge in this case, having observed appellant, may have thought him competent. But it plainly appears from Pate v. Robinson that appellant's apparent alertness and understanding during trial cannot wipe out the uncontradicted testimony that his memory and other intellectual functions became severely impaired when he was under the influence of narcotics. While his demeanor at trial may be a relevant factor, it is by no means the only one and it cannot obviate the need for a hearing on his competence.[10] This reasoning applies with particular force to a defendant who may be under the influence of narcotics, since the symptoms and effects of an acute brain syndrome produced by narcotics will often not be apparent to a lay observer, even a judge, but only to an expert. Even then a careful examination would seem necessary to determine the extent to which the defendant's memory and other rational faculties have been impaired by the drugs.[11]

█ Nor can the District Court's previous determination of competency relieve the trial court of its constitutional duty to conduct an inquiry at the time of the trial. In Pouncey v. United States,[12] the defendant had been found

9. See, e. g., PRESIDENT'S AD HOC PANEL ON DRUG ABUSE, PROGRESS REPORT 21 (1962); JOINT COMMITTEE OF THE AMERICAN BAR ASS'N & THE AMERICAN MEDICAL ASS'N ON NARCOTIC DRUGS, INTERIM AND FINAL REPORTS 42–44 (1961); MAURER & VOGEL 85–86, 184; Bowman, *Narcotic Addiction and Criminal Responsibility under Durham*, 53 GEO.L.J. 1017, 1039 (1965).

As with the symptoms of an acute brain syndrome produced by narcotics, the degree of severity of withdrawal symptoms and their particular manifestations vary greatly depending on the individual and on the duration and intensity of his use of the drugs. See, e. g., MAURER & VOGEL 85–86.

10. See 383 U.S. at 385–386, 86 S.Ct. 836.

11. See, e. g., MAURER & VOGEL 84; NOYES & KOLB, MODERN CLINICAL PSYCHIATRY 144 (6th ed. 1963). The court-appointed psychiatrist in this case testified that a * * * good number of narcotic addicts do not become euphoric, they become really, in a manner of speaking, for superficial purposes, almost quite normal and they act quite normal superficially.

\* \* \* \* \*

* * * for example when he [appellant] came into the office he appeared quite normal and then when we really began to test his limits it became fairly apparent that he was under the use of narcotics.

The Supreme Court has also recognized this difficulty. In Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148 (1963), the Court ruled that a hearing was necessary under 28 U.S.C. § 2255 in order to test a claim of incompetence based on narcotic use during trial, and stated that "Whether or not [the defendant] * * * was under the influence of narcotics [during trial] would not necessarily have been apparent to the trial judge." *Id.* at 20, 83 S.Ct. at 1079. Further, because lay observations will often be inaccurate, the fact that defense counsel did not think defendant incompetent, although of evidentiary value, can never be dispositive.

12. 121 U.S.App.D.C. 264, 349 F.2d 699 (1965). *Cf.* Stone v. United States, 358 F.2d 503 (9th Cir. 1966).

competent by the District Court following examination at Saint Elizabeths Hospital, but his behavior at trial cast doubt on that finding. We there stated that

> [A] judge's responsibility to guard against the possibility that an accused person may have become incompetent does not end when the trial begins. A hospital report is only a prediction that when the accused is tried he will be able to participate adequately in the proceedings. Later developments may throw doubt on the prediction, particularly when, as in this case, the report does not show the hospital's understanding of "competence", the tests it employed, or the certainty of its diagnosis.[13]

We therefore held that, despite the earlier finding of competency, the trial court had erred by failing to inquire further at the time of the trial.

In the present case, the predictive value of the Hospital report and of the initial judicial determination of appellant's competency was vitiated by appellant's resumption of his use of narcotics following his examination. This fact, brought out at trial, should have put the trial court on notice that appellant might then have become incompetent. Furthermore, although the trial court recognized the possibility that appellant might suffer withdrawal symptoms upon incarceration during the trial, it allowed the trial to proceed without the slightest recognition that any competency problem might then arise. The decisions in *Robinson*[14] and *Pouncey* teach that the trial court's failure to conduct, sua sponte, an inquiry into his competence denied appellant a "fair trial." [15]

█ The only appropriate remedy for this constitutional violation is a new

---

13. *Id.*, at 265, 349 F.2d at 700 (footnote omitted). The report of Saint Elizabeths Hospital in this case did not contain a diagnosis but merely stated that "As a result of our examination and observation, it is our opinion that [appellant] is mentally competent for trial." We have complained long and often, without success, that such conclusionary and uninformative boilerplate reports cannot assist the court in making any legal determination. See, *e. g.*, Whalem v. United States, 120 U.S.App.D.C. 331, 339–341, 346 F.2d 812, 820–22 (1965) (dissenting opinion); Holloway v. United States, 119 U.S.App.D.C. 396, 398–399, 343 F.2d 265, 267–268 (1964). Recent cases indicate new dangers concerning these reports. For example, in May v. Cameron, H.C. No. 572–65 (D.D.C. Feb. 16, 1965), petitioner, a patient at Saint Elizabeths, alleged only that the Hospital had interfered with his right of free access to the courts and sought an order to prevent this interference. The Hospital Superintendant made this totally irrelevant reply to an order to show cause: "the medical staff * * * are of the opinion that [petitioner] has not recovered from his abnormal mental condition * * * and, the respondent is unable to certify that petitioner will not be dangerous to himself or others * * *." For a similar instance of a completely conclusionary and irrelevant

response see Leach v. United States, 122 U.S.App.D.C. 280, 282, 353 F.2d 451, 452–453 (1965). The question arises whether the Hospital's program of testing and examination is directed to the court's inquiry. But uninformative boilerplate replies hide inadequacies in the methods and reasoning underlying the reports.

14. In Whalem v. United States, 120 U.S. App.D.C. 331, 333–36, 346 F.2d 812, 814–17, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965), we held that in the absence of objection to a conclusionary hospital report the District Court has discretion to make a finding of competence solely on the basis of the report. But in the present case, appellant's behavior following such report patently undercut its predictive value. See Pouncey v. United States, *supra* note 12, 349 F.2d at 700–701. We therefore need not decide whether Pate v. Robinson has, in effect, overruled that portion of our *Whalem* decision.

15. The requisite hearing need not have caused a major disruption to the trial. Appellant's admission of narcotic use occurred at the end of an afternoon session and the trial court could have ordered a mental examination of appellant by the Legal Psychiatric Services that night with a report to be filed the next morning.

trial.[16] A retrospective determination of competency is difficult at best. It is virtually impossible where, as here, there is no contemporaneous testimony or evidence of appellant's competence at the time of trial and where his present condition—incarcerated and presumably no longer under the influence of narcotics or suffering from withdrawal—is unquestionably different. An expert who now examined him could do no more than speculate unduly about his mental condition at his trial a year ago.[17]

Reversed.

DANAHER, Circuit Judge, (dissenting):

I fully agree with my colleagues that the record here disclosed no merit in the contention that there had been entrapment as a matter of law. Additionally without substance is appellant's only other claim that the conviction should be reversed because of "inconsistencies and lack of candor in testimony presented by the Government." Although addicted to narcotics, this appellant is also a wary peddler of narcotics. When arrested he had on his person six grams of heroin of a market value of some $750.

At trial his counsel had sought through an expert witness to establish a basis for exculpation because of addiction at the time of the offense. Not once, by direction or indirection, in argument or otherwise, did counsel assert before the trial judge that Hansford was incompetent to stand trial. On this appeal, not once, either in his main brief or in his reply, was it contended that Hansford was not competent at trial.

I

I do not at all agree with the majority that "the only appropriate remedy" is a new trial. If this ruling by my colleagues is to stand despite our previous rejection[1] of their premise, Congress once again should undertake a review of the novel aspects in which various "insanity" issues are being treated by this Circuit. It is high time that the burden of establishing the defense of insanity be placed upon the accused. If one charged with the commission of crime shall claim that by reason of insanity he is entitled to exculpation from responsibility, he should be required affirmatively to assert and prove the basis upon which he seeks to be excused.

16. See, e. g., Pate v. Robinson, 383 U.S. 375, 386–387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) ; Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) ; Holloway v. United States, 119 U.S.App.D.C. 396, 343 F.2d 265 (1964). Rees v. Peyton, *supra* note 7, is not to the contrary since the issue there was petitioner's competence *to* withdraw his writ of certiorari not his competence *to* stand trial. Similarly, Bishop v. United States, *supra* note 7, and Sanders v. United States, *supra* note 7, as well as all other cases arising on collateral attack, are inapposite because the only possible way to determine the question of competence to stand trial in this situation is by retrospective hearing. On the other hand, the Supreme Court has forcefully indicated that where the question of competence is presented on direct appeal and a retrospective hearing is not inevitable, the proper procedure is to vacate the conviction and order a prospective competency hearing followed by a new trial if the accused is found competent. Dusky v. United States, *supra;* Pate v. Robinson, *supra.*

Statements and holdings to the contrary found in cases decided by this court prior to *Dusky* must, of course, be disregarded to the extent that they conflict with these Supreme Court decisions.

17. The fact that appellant was examined by a court-appointed psychiatrist while under the influence of narcotics does not justify a nunc pro tunc hearing since that expert would have to testify from his year-old memory of appellant and since it would be impossible to test his opinion by having appellant examined by another psychiatrist.

1. Heard v. United States, 121 U.S.App. D.C. 37, 39 and n. 3, 348 F.2d 43, 45 and n. 3 (1964). We denied a rehearing *en banc,* 121 U.S.App.D.C. at 42, 348 F.2d at 48 (1965). There we specifically held that a mere showing of narcotics addiction, without more, does not constitute "some evidence" of mental disease or "insanity" so as to raise the issue of criminal responsibility. We refused to hold that every addict's case is an insanity case.

---

My colleagues are now[2] saying that one addicted to narcotics may not even be tried unless at trial his competency shall be established—even though, as here, the staff at St. Elizabeths had certified his competency and the Government's expert testified that Hansford was without mental disorder.

We said in Winn v. United States[3]:

> "There is a vast difference between that mental state which permits an accused to be tried and that which permits him to be held responsible for a crime."

This appellant had not challenged the certification of his competence to stand trial. This court en banc has held expressly that a trial judge

> "is not *bound* to hold a hearing on the issue of competency when an accused is certified to be competent and there is no objection to such certification."[4]

The trial judge here had three days within which to observe this appellant and had the benefit not only of his demeanor but of his testimony. He was not required to hold that Hansford was competent for the trier's ruling became clear from his action.[5]

Let us look further at the record. At trial Hansford informed his counsel that he wished to testify. The record of his testimony disclosed his history, narrated in great detail. His counsel asked that appellant explain "why you were using narcotics at this time, if you are?" He answered:

> "Well, for one reason, I—it gives me a relief from strain that I feel; I frequently feel like I am under strain and when I am using narcotics it more or less gives me a relief from that and—
>
> "Q. What kind of strain, David?
>
> "A. Well, I imagine it's some sort of tension, irritation."

The appellant explained his decision "to go to trial in this case" in that he needed some help,[6] and that his only chance of going to a hospital or getting some type of treatment would be through

---

2. Compare Lloyd v. United States, 119 U.S. App.D.C. 373, 343 F.2d 242 (1964) where we denied rehearing *en banc*, and where the Supreme Court denied certiorari, 381 U.S. 952, 85 S.Ct. 1809, 14 L.Ed.2d 725 (1965); and Adams v. United States, 119 U.S.App.D.C. 152, 337 F.2d 548, rehearing *en banc* denied (1964). This court *en banc* earlier rejected the contention of one or two of our colleagues as to their construction of Robinson v. State of California, 370 U.S. 660, 662, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); cf. Castle v. United States, 120 U.S. App.D.C. 398, 347 F.2d 492 (1964), cert. denied, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965). But see our discussion in Heard v. United States, *supra* note 1.

3. 106 U.S.App.D.C. 133, 135, 270 F.2d 326, 328 (1959).

4. Whalem v. United States, 120 U.S.App. D.C. 331, 335, 346 F.2d 812, 816, cert. denied, 382 U.S. 862, 86 S.Ct. 124 (1965); and see Green v. United States, 122 U.S.App.D.C. 33, 35, 36, 351 F.2d 198, 200, 201 (*en banc*, 1965). Where a proper showing has been made, we have a very different situation. See,

*e. g.*, Coates v. United States, 106 U.S. App.D.C. 389, 273 F.2d 514 (1959), and after remand, 109 U.S.App.D.C. 200, 201, 285 F.2d 280, 281 (1960), cert. denied, 366 U.S. 914, 81 S.Ct. 1089, 6 L.Ed.2d 237 (1961).

5. Green v. United States, *supra* note 4. Of course the issue of Hansford's sanity at the time of the offense had been fully explored. The judge ruled against him as properly he was free to do. Horton v. United States, 115 U.S.App.D.C. 184, 317 F.2d 595 (1963); Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616 (1963), rehearing *en banc* denied (1964); Rivers v. United States, 117 U.S.App.D.C. 375, 330 F.2d 841, rehearing *en banc* denied (1964).

6. The trial judge might well have concluded that this appellant is a shrewd schemer. At an earlier trial on other charges in 1960, he had claimed entrapment as he did here. He testified then that he was an addict and that he was a voluntary patient at the D.C. General Hospital. His conviction was reversed. Hansford v. United States, 112 U.S.App. D.C. 359, 360, 303 F.2d 219, 220 (1962).

the court.[7] He was quite aware of the possibility that his tactics might again succeed.

"[A]nd if I pleaded guilty to the charge, well, I would more or less be sent to prison and I don't think I could get the type of help that I needed in prison, so I said I'd just rather run the risk of going to trial because there I would at least have a small chance of going to the hospital, some time [sic, kind?] of chance, anyway, for going to the hospital."

Such was the background against which my colleagues now order a new trial, purportedly because they themselves raise an issue as to Hansford's competency to stand trial. The Supreme Court adopted as a test of the competency of an accused

"whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788(1960).

As noted, there was no suggestion of a claim that this appellant failed to meet that test. The very facts of the instant case, the record of the trial proceedings and our precedents overwhelmingly require rejection of the course my colleagues now demand. Even were there a justifiable basis for doubt that Hansford's mental capacity fell short of meeting the prescribed test, at most the proper course would be to remand for a determination of competency by the trial court. That was the procedure adopted by the Supreme Court as late as May 31, 1966 in Rees v. Peyton, 384 U.S. 312, 86 S.Ct. 1505 (1966) when it remanded for a hearing, meanwhile retaining juris-

diction pending report by the District Court of its findings and conclusions. A remand was ordered where a District Court hearing had been denied in a section 2255 proceeding in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068 (1963). A remand for a hearing on the issue of the prisoner's sanity at the time of trial was commanded in Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The "uncontradicted testimony of Robinson's history of pronounced irrational behavior" was enough for the Court in Pate v. Robinson, 383 U.S. 375, 385–386, 86 S.Ct. 836, 842 (1966) where six years had elapsed following the conviction. And all any reader need do to understand Dusky v. United States, supra, is to examine the bizarre background detailed by the Court of Appeals in Dusky v. United States, 271 F.2d 385 (8 Cir. 1959). There simply is nothing on this record even remotely comparable to the circumstances underlying the Supreme Court's ruling in the cases mentioned.

I find it difficult to take seriously the reference in my colleagues' footnote 7 to the Supreme Court's "increasing concern" as distinguished from our own in view of repeated actions by this court when we have considered the problem of competence to stand trial. In Lloyd v. United States, 101 U.S. App.D.C. 116, 247 F.2d 522 (1957), we noted that in several cases we had found it necessary in the interests of justice to direct the District Court to hold a hearing to determine nunc pro tunc, a defendant's competency to stand trial. We directed, as here pertinent, that if the District Court found the appellant competent to stand trial, he was to be entitled to no relief. And compare Lloyd v. United States, my note 2, supra. Stone v. United States, 358 F.2d 503 (9 Cir. 1966), cited by my

---

7. Hansford's testimony at the very end was not offered until after he had seen the course the trial was taking. The judge revoked his bail after Hansford disclosed that he was supporting his addiction by acting as a fence for thieves even while the trial progressed. Hansford thereafter sought release on bond and appealed from a denial in the District Court. He succeeded in persuading a dissenting judge that "if released" he would hope "to enroll" in a narcotics addiction program. Hansford v. United States, 122 U.S.App.D.C. 320, 324, 353 F.2d 858, 862 (1965).

colleagues, adds nothing to our own legal literature in situations arising under 18 U.S.C. § 4244; see, e.g., Gunther v. United States, 94 U.S. App.D.C. 243, 215 F.2d 493 (1954). Our concern respecting the issue of competency was emphatically reflected in the unanimous action of this court, sitting *en banc*, in Wells v. United States, 99 U.S. App.D.C. 310, 239 F.2d 931 (1956). Under the circumstances there outlined, we remanded with the direction that if the District Court determined that Wells was incompetent when tried, the conviction should be vacated. But now, despite our repeated precedents, a new trial is ordered.

Enough has been said to demonstrate, I suggest, that the innovations contemplated by my colleagues run counter to a thoroughly established body of law, both in the Supreme Court and here. Not only have we not equated addiction to narcotics with such mental illness as to render an accused incompetent, without more, but where an issue of competency at the time of an error-free trial has nevertheless been noticed upon motion of the accused, our settled procedure has called, not for a new trial, but for remand on the single point. We do not at all have here the "difficult questions of state-federal relations posed by [such] rulings" as the Supreme Court undertook to resolve in Pate v. Robinson.[8]

Rather, this appellant's counsel, the prosecutor and the judge joined in extended colloquy as they canvassed possibilities for *treatment*. A St. Elizabeths Hospital spokesman took the position, as the judge reported, that it was not equipped to treat those who are victims of addiction to narcotics as distinguished from patients who are mentally ill. With St. Elizabeths thus eliminated, the judge voiced doubt as to the efficacy of a sentence to Lexington since Hansford had previously undergone treatment there. Still the judge felt it necessary to observe:

"The answer is, there just isn't any ideal solution to this problem, there just isn't any, and I guess that all the Court can do is follow the law and hope that Congress will somehow devise a program to take care of it, and what that program will be I honestly don't know, but it's something that looks like the Court can't do except to take advantage of what Congress has provided, which is Lexington."

The judge followed the law. He followed our decisions and the applicable statutes. My view is that this court also should "follow the law and hope that Congress will somehow devise a program to take care" of problems like this.

I feel that nothing is to be gained by putting the Government, once again, to a protracted trial which in net result will establish no more than that Hansford is guilty of the charge laid in against him and that for many years, though not mentally ill, he has been addicted to narcotics. At that point the case will be right back where it was when the following occurred, as the transcript shows:

[Trial Counsel]: "Your Honor, may I say one more thing about Lexington: The choice of whether or not to send this defendant to Lexington is up to the Bureau of Prisons, and there is nothing that can be done to direct their choice one way or the other.

"The Court: I can put right much pressure on them.

[Prosecutor]: "Your Honor, I believe they would follow your recommendation.

"The Court: Well, they usually have. There have been occasions in which they haven't, but I can tell you in this case I would be inclined to follow it up personally, and I believe that I could achieve that result."[9]

## II

And that is what this record shows us. This peddler's tactics had proved successful in a previous trial on other

8. 383 U.S. 375, 86 S.Ct. 836 (1966).

9. Apparently that is what he did. See Hansford v. United States, *supra* note 7.

charges,[10] and again a new trial is being ordered. My colleagues say, as they must, that St. Elizabeths had found him competent to stand trial. As I noted, and as my colleagues concede, the appellant did not challenge the hospital report nor did he request a hearing on his competence to stand trial. All the talk about withdrawal symptoms evaporates upon examination of our record for there was no evidence whatever that *this* appellant was experiencing any such symptoms. My colleagues say a competency hearing may be required "*if* it appears that a defendant *may be* suffering from withdrawal symptoms during trial." (Emphasis added.) But he was not.

They then say the "trial judge in this case, *having observed* appellant, *may have* thought him competent." (Emphasis added.) Of course he did. There was no suggestion by appellant, by his counsel or otherwise that the appellant was experiencing "perspiration, waves of gooseflesh, muscle twitch, body aches" and all the rest of it. The judge revoked appellant's bail when he learned that Hansford was fencing for thieves during the trial and thus was obtaining funds to continue a habit which satisfied him and made him feel comfortable. His demeanor obviously permitted the judge to "have thought him competent."

I confess I do not know where my colleagues are taking us. It is common knowledge that many accused chargeable with serious crimes are or have been addicted to narcotics. Must they—ipso facto—receive a hearing to determine their competency to stand trial even where they raise no such issue? In this very case, St. Elizabeths staff says the appellant is without mental disorder. The hospital authorities certified he is competent. Yet my colleagues rule otherwise because he is admittedly addicted to narcotics. My colleagues here would transform the court into a social laboratory, not governed by rules of law applicable to appellate review, but by the views of text writers whose works [11] may or may not have standing in the psychiatric profession. What are District Judges to do if not "to follow the law"?

For one thing, they can revoke the bail of any previously released narcotics addict the moment his case is assigned for trial. They can see to it that the accused is taken off narcotics.[12] At least when trial goes forward, the accused can thus be brought into court without giving rise to a later opportunity to gain a new trial on any such ground as my colleagues here advance.

Another thing the District Judges can do is to examine the writings of this court and distinguish the *holdings* of our opinions from the pages of dictum so frequently uttered.[13] Some of us

10. See notes 6 and 7, *supra.*

11. Certainly their views and their standing have not been demonstrated to be authoritative. See generally, 6 WIGMORE, EVIDENCE § 1700 (3d ed. 1940). More importantly, those views obviously were not shared by the staff at St. Elizabeths or by the Government's expert whose testimony the trial judge was free to accept.

12. The evidence here showed that the "acute brain syndrome" my colleagues talk about "simply means that a physiological condition has manifested itself quickly. It lasts a relatively short time. It is called acute. It is temporary." And it may be induced by "four or six" alcoholic drinks as well as by self-administered narcotics. Hansford had so induced his own "acute brain syndrome" before visiting the examining expert. But he had none in St. Elizabeths.

13. See, e. g., Holmes v. United States, 124 U.S.App.D.C. —, 363 F.2d 281 (1966), where the judgment of conviction actually was affirmed, and the accused was found entitled to no relief under § 2255. Yet because of the *Holmes* dictum, I suppose some defense counsel are now being invited to propose innovation in our trial system contrary to our practice, without standards, indeed with the announcement of a technique which other jurisdictions have rejected.

No citation is required to demonstrate the extensive dicta to be noted in yet other cases where data relevant for clinical purposes are being confounded with

hope that by virtue of our previous rulings, *stare decisis* still has some vitality, both here and in the District Court. Neither bench nor bar can possibly know of the divisions of viewpoint among the judges of this court unless the non-sitting active judges have been asked to pass upon a petition for rehearing *en banc,* filed by a party to the case. The court may sit *en banc* only when a majority of the active judges shall so vote.[14] Even when as many as four non-sitting judges may have urged that the court, sua sponte, sit *en banc* to consider some novel proposal, those outside the court do not know it. Thus it is that often enough—even too often—two judges who constitute a majority of a three-judge panel seem to speak for the entire court. Particularly are we aware of an increasingly expanded approach to problems involving exculpation from responsibility for crime. An accused, faced with overwhelming evidence of guilt exclaims "I must have been out of my mind to do a thing like that" when, presto, he may seek a verdict of not guilty by reason of insanity.

And so it goes. Now when it appears that an accused, addicted to narcotics, tried in accordance with the standards prescribed in McDonald v. United States[15] may lawfully be held criminally responsible for his offense, my colleagues would order a new trial. It is ordered that the District Court determine whether he is even competent to stand trial although he never claimed that he was not. The far-reaching consequences of what is being done in this case are only dimly to be discerned.

For my part, I have become quite persuaded that Congress should place upon an accused the burden of establishing his entitlement to a verdict of not guilty

by reason of insanity. Like any other affirmative plea for relief, let it be alleged and demonstrated by him who seeks exculpation from criminal responsibility. As for the competence of an accused to stand trial in the first place, let us follow the statute. D.C.CODE § 24–301 (1961) provides that when "it shall appear to the court from the court's own observations, or from prima facie evidence submitted to the court, that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense," the judge is to order that person's commitment *until he is competent to stand trial.* And when such an unchallenged determination shall have been made, as here, by the authorities at the hospital, let us hold him to it.

legal evidence essential for a trial determination of legal responsibility for the offense charged. See, e. g., Rollerson v. United States, 119 U.S.App.D.C. 400, 343 F.2d 269 (1964) and Henderson v. United States, 123 U.S.App.D.C. 380, 360 F.2d 514 (1966).

14. Of course, if counsel for one of the parties shall move for rehearing *en banc* after an opinion has been issued, all sitting judges are free to express their views, then having had the benefit of the briefs and an opportunity for consideration of the record in the questioned case.

15. 114 U.S.App.D.C. 120, 312 F.2d 847 (*en banc,* 1962).