**Ronnie Dean DICKENSON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. A. No. 70-C-27-A.

United States District Court,
W. D. Virginia,
Abingdon Division.

May 4, 1970.

Jackson S. White, Jr., Abingdon, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for the United States.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This proceeding comes before the court on a petition for a writ of habeas corpus (*Motion to Vacate Sentence and Judgment*), filed *in forma pauperis* by Ronnie Dean Dickenson, pursuant to 28 U.S.C. § 2255. Said petition was filed in this court on the 23rd of March, 1970, and respondent filed an answer thereto, moving said court to dismiss the petition. In moving for dismissal, respondent likewise, moves that the petitioner be denied his request for an evidentiary hearing on the merits of the petition.

Dickenson contends that he was under a narcotic drug influence when he was undergoing psychiatric observations at Saint Elizabeth's Hospital in Washington, D. C. Also, the petitioner alleges

that said narcotic drugs rendered him "mentally incapacitated" during his subsequent arraignment, as well as, during the period when he entered his guilty plea and was sentenced on the 15th of June, 1964. For this reason, Dickenson concludes that his sentence should be vacated.

Examination of the record before this court reveals the following data. The petitioner is currently serving two concurrent, thirty-five (35) year sentences imposed upon him by the United States District Court for the Western District of Virginia, at Abingdon, on the 15th of June, 1964. Dickenson plead guilty to two indictments, each of which charged him with violation of the federal kidnapping statute, 18 U.S.C. § 1201 (1964), and the Dyer Act, 18 U.S.C. § 2312 (1964). In October, 1965, the petitioner sought relief by filing a petition for a writ of habeas corpus, as provided for by 28 U.S.C. § 2255. In said petition, the petitioner maintained the following allegations:

1. ineffective assistance of counsel;

2. that he pleaded guilty out of fear;

3. that he should have had an examination of an "independent psychiatrist"; and

4. coercion on the part of his court-appointed counsel and the United States Attorney.

This court, after presiding over an evidentiary hearing that had been afforded Dickenson, denied and dismissed the petition on the 22nd of November, 1965. An appeal to the United States Court of Appeals for the Fourth Circuit was perfected, the result being an affirmation of the District Court's opinion and judgment. The Fourth Circuit, in a *per curiam* decision, said that the district court judge found:

\* \* \* either specifically or implicitly, that the guilty pleas had been entered voluntarily, that they were not induced by the presence of an involun-

tary confession, and that Dickenson's counsel afforded him effective representation. *Our study convinces us that these findings and conclusions are substantially supported by the record.* (Emphasis added.) September 12, 1966—No. 10,490)

Petitioner Dickenson now seeks habeas corpus relief by contending that throughout his arraignment proceeding, his subsequent plea of guilty, and then his ultimate sentencing, he was under the influence of narcotic drugs which rendered him "mentally incapacitated" to stand trial and enter pleas of guilty. In support of such contentions, Dickenson maintains that he can prove, via witnesses, that he bought, used and was under the influence of said narcotic drugs.

With respect to petitioner's main allegation of "mental incompetency" this court is of the following view.

As stated in Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed. 2d 815 (1966), "the conviction of an accused person while he is legally incompetent violates due process. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)." In similar fashion, the question herein revolves around whether or not Dickenson was so (mentally) incompetent so as to render the pre-trial and trial proceedings void of due process standards.[1]

In light of the above, the test used in measuring due process violations was enunciated by the Supreme Court in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The Court therein stated that the:

\* \* \* test must be whether (the accused) \* \* \* has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.

---

1. See Pledger v. United States, 272 F.2d 69 (4 Cir. 1959) where the court held that 28 U.S.C. § 2255 was a proper method to inquire into petitioner's claimed incapacity due to the use of narcotic drugs.

See, Grennett v. United States, 131 U.S. App.D.C. 202, 403 F.2d 928, 930 (1968); Hansford v. United States, 124 U.S. App.D.C. 387, 365 F.2d 920, 922 (1966).

The records show that this court, by order of March 27, 1964, committed the petitioner to Saint Elizabeth's Hospital in Washington, D. C., for a mental examination. The report, by letter dated May 25, 1964, from the Acting Superintendent, David W. Harris, M.D., stated as follows:

Mr. Ronnie D. Dickenson was admitted to St. Elizabeth's Hospital on April 2, 1964, for mental observation for a period not to exceed sixty days.

Mr. Dickenson's case has been studied since his admission to the hospital and he has been examined by qualified psychiatrists. On May 20, 1964, he was examined and his case reviewed in detail at a medical staff conference.

As a result of our examinations and observations it is our opinion that Ronnie D. Dickenson is mentally competent for trial. There is no indication that on or about January 22, 1964 this patient was suffering from mental disease or defect.

(See page 25—Habeas Corpus Hearing Transcript) November 22, 1965.

From the foregoing it appears that the petitioner was competent to stand trial at the time in question.[2] Dickenson however asserts that it was during and after his stay at Saint Elizabeth's Hospital that he contracted mental illness through the use of drugs. It seems apparent from petitioner's own statements in his petition that during the time he was being examined and observed at St. Elizabeth's he was under the influence of narcotic drugs. The medical report shows no signs of such a conclusion. It seems highly doubtful that the examining personnel would not detect the alleged narcotic use.

However, for the sake of argument, let us assume that the petitioner's allegation of his use of narcotic drugs is correct. The courts have interpreted cases, wherein the use of narcotic drugs were present, as not necessarily demonstrating that an individual was incompetent. The United States Court of Appeals for the District of Columbia said in Grennett v. United States, supra, 403 F.2d at 931, that

* * * (I)n our view, evidence of some narcotics use is not sufficient to establish as a matter of law that defendant lacks either competency to stand trial or the capacity to understand the nature and consequences of a guilty plea.

In accord, White v. United States, 367 F.2d 788 (8th Cir., 1966); Holmes v. United States, 323 F.2d 430 (7th Cir., 1963), cert. denied, 376 U.S. 933, 84 S.Ct. 704, 11 L.Ed.2d 652 (1964).

This court in Wood v. United States, 251 F.Supp. 310, 315 (D.C.1966) maintained a similar view wherein we said:

* * * (T)here appears to be no authority for a rule which would per se render a defendant who is using narcotics incompetent to stand trial. See United States v. Tom, 340 F.2d 127 (2nd Cir., 1965).

The court in Grennett went so far as to say that:

* * * (w)e believe that even if appellant's evidence suffices to show that he was using narcotics to some extent at the time of plea, he has failed to prove by a preponderance of the evidence, as he is obliged to do in a collateral proceeding, that his condition of being under the influence of narcotics at the relevant time was accompanied by incompetence to stand trial or incapacity to understand the nature and consequences of his plea. Id., 403 F.2d at 930.

If anything at all, the record discloses petitioner's complete understanding of the "nature and consequences of his plea". The original trial transcript

---

2. The evidence did not show a long period of disturbed mental behavior which could have created some question as to the petitioner's competence to stand trial.

See, Powell v. United States, 125 U.S. App.D.C. 364, 373 F.2d 225, 226 (1966) for a similar situation.

shows the following discussion by the parties involved as to the two indictments.

THE CLERK: Mr. Dickenson, step forward here, please. Please pay attention.

UNITED STATES OF AMERICA

v.

RONNIE DEAN DICKENSON
Criminal No. 64–CR–16–R

In the presence of Joseph P. Johnson, Esq. and Thomas L. Hutton, Jr., Esq., my counsel, who have fully explained the charges contained in the indictment against me, and having received a copy of the indictment from the United States Attorney before being called upon to plead, I hereby plead guilty to said indictment and each count thereof. I have been advised of the maximum punishment which may be imposed by the court for this offense. My plea of guilty is made voluntarily and without threat or promise of any kind."

Is this correct?

DEFENDANT DICKENSON: That's right.

THE CLERK: All right, sign right here, Ronnie Dean Dickenson.

(The defendant signed the written plea as read to him by the Clerk.)

THE CLERK: Now, Mr. Johnson, and, Mr. Hutton, if you will please sign as witnesses.

(Counsel for the defendant thereupon signed the written plea as read to the defendant by the Clerk.)

MR. MUSGROVE: All right, Mr. Dickenson, the second indictment which the grand jury has returned against you, Number 64–CR–17–R, charges that on or about January 22, 1964, you did knowingly transport in interstate commerce from the County of Wise, in the Western District of Virginia, to Letcher County, in the State of Kentucky, one Stella Louise Steffy, who had theretofore been unlawfully seized, kidnapped, carried away and held by you for the purpose of aiding you to escape arrest.

The second count in this indictment charges that on or about January 22, 1964, you did transport in interstate commerce from the County of Wise, in the Western District of Virginia, to Letcher County, Kentucky, one 1961 Renault four-door sedan, knowing the same to have been stolen, in violation of law.

Mr. Dickenson, I will hand you a copy of this indictment and ask you if you understand the charges contained in that indictment?

DEFENDANT DICKENSON: I would like to speak to my counsel, if I can.

MR. MUSGROVE: All right.

THE COURT: You wish to confer with your counsel again?

DEFENDANT DICKENSON: Yes, sir.

THE COURT: All right, now, Mr. Marshal, you let them go out to one of the rooms, the Judge's library or wherever they wish to confer.

(Thereupon the defendant Dickenson and counsel for the defendant left the courtroom to confer.)

(After conference between defendant and counsel for defendant, the parties returned to the courtroom and the following proceedings took place.)

THE COURT: All right, gentlemen, we were at the place where the United States Attorney had read indictment number two and the defendant said that he wanted to confer with counsel. Now what is the situation now with reference to the plea as to indictment number two?

MR. MUSGROVE: I think I asked you, Mr. Dickenson, if you understood the charges in the indictment, and at that point you said that you wanted to confer further with your attorneys. I ask you again, do you understand the charges in the second indictment?

DEFENDANT DICKENSON: Yes, sir.

MR. MUSGROVE: —which I read to you. You have had an opportunity to discuss the matter with your two court-appointed attorneys. Is that right?

DEFENDANT DICKENSON: Yes, sir.

MR. MUSGROVE: Are you prepared at this time to enter a plea to the indictment?

DEFENDANT DICKENSON: Yeah, I plead guilty.

MR. MUSGROVE: I advise you as to the second indictment as I did to the first, that the maximum punishment that can be imposed upon this indictment is life imprisonment upon the first count and five years imprisonment on the second count and a $5,000 fine. Does that make any difference in your plea?

DEFENDANT DICKENSON: No, sir.

MR. MUSGROVE: It does not. All right.

THE CLERK: All right, Mr. Dickenson, please follow this.

UNITED STATES OF AMERICA

v.

RONNIE DEAN DICKENSON
Criminal No. 64–CR–17–R

"In the presence of Joseph P. Johnson, Jr., Esq., and Thomas L. Hutton, Jr., Esq., my counsel, who have fully explained the charges contained in the indictment against me, and having received a copy of the indictment from the United States Attorney before being called upon to plead, I hereby plead guilty to said indictment and each count thereof. I have been advised of the maximum punishment which may be imposed by the court for this offense. My plea of guilty is made voluntarily and without threat or promise of any kind."

Is this correct?

DEFENDANT DICKENSON: That's right.

THE CLERK: Is it correct?

DEFENDANT DICKENSON: Yes, sir.

THE CLERK: All right, sign here. (The defendant signed the written plea as read to him by the Clerk.)

(The foregoing discussion transpired during petitioner's original criminal trial on the 15th of June, 1964. See pages 4 through 8.)

In supplement to the above, the following discourse took place during the habeas corpus evidentiary hearing on the 22nd of November, 1965. Mr. Thomas L. Hutton, Jr., Esq., who represented the petitioner at his original criminal trial, testified as follows:

THE COURT: Yes, as far as I am concerned you can tell the whole story.

A. (continuing) All right, sir. We explained the charges to him as best we knew, what the possible penalties would be, asked him what he wanted to do, explained to him what the—what would happen, or what we thought could happen if he had a jury trial; that he had a right to a jury trial, and enter a plea of not guilty or the right to enter a plea of guilty and be tried by the Judge; and talked with him along those lines and discussed the facts with him. As well as I remember he had no witnesses that he wanted to offer or wanted us to have here summoned. And after some discussion with him and after a good deal of work, he agreed to enter a plea of guilty or wanted to enter a plea of guilty.

Q. You advised him to do so?

A. No, sir, I did not advise him to do so. I advised him of what could happen, or what we thought could happen; what his rights were and explained the thing to him as fully as we knew how, and I remember saying to him myself that if he got any time I wasn't going to be one that served it, he

was, and he could do what he wanted to after we explained it to him. He was more than willing at that time to enter a plea of guilty.

(See Habeas Corpus Hearing, November 22, 1965—Pages 4 & 5.)

Similar testimony was given by Mr. Joseph P. Johnson, Jr., Esq., who was co-counsel with Mr. Hutton in the case at bar. (See Habeas Corpus Hearing, November 22, 1965—Pages 28–53.)

Finally, as we stated at the outset, the standard enunciated by the Supreme Court in *Dusky* controls the case at bar. In *Dusky*, the Court looked to an accused's ability to understand, within a reasonable degree, the proceedings against said person, as well as, his ability to consult with his lawyer. As clearly pointed out in the preceding pages of testimony, and as illustrated in the following statement by Joseph P. Johnson, Jr., the petitioner was not only aware of the trial proceedings on June 15, 1964, but also had substantial time to consult with, and understand, what his lawyers were doing on his behalf.

Mr. Johnson stated at the Habeas Corpus hearing as follows:

Q. * * * Specifically, I want to ask you, did Mr. Dickenson, while he was actually in the process of entering his plea, ask you to retire from this courtroom with him?

A. Yes, sir, he did.

Q. Did he at that time object to the possibility of pleading guilty to both of the charges?

A. No, sir. His only concern was I believe, after the attorney for the government had read him the possible penalties, he wanted to go back and be reassured that certain things would be true. At that time I told him that I certainly wouldn't guarantee him that the Judge would do anything, that we were taking chances, and that was his concern.

That morning, after we were ready for trial, or just prior to trial time, the government attorney asked whether or not he would enter a plea of guilty. We discussed it with Mr. Dickenson. He—The government attorney said that he thought he should have thirty-five on each, thirty-five years. I talked to Mr. Dickenson in the presence of his mother and some other people, and he decided that if the thirty—two thirty-five year sentences would run concurrently, then that is what he wanted.

Then after he got out here and the penalties were read, of course he thought maybe somebody was giving him some bum information. He wanted to go back and talk about that. We went out and talked about it and returned. He said he understood and was willing to go forward.

(Habeas Corpus Hearing—Pages 39 & 40.)

After careful review of the entire record to date, it is the judgment of this court that it is not necessary that an evidentiary hearing be held. The original trial transcript, petitioner's subsequent habeas corpus hearing in November of 1965, and applicable case law, provide a sufficient basis upon which to deny petitioner's request for an evidentiary hearing. The Court of Appeals for the District of Columbia in Powell v. United States, *supra,* 373 F.2d at 226, said that:

* * * (I)n *Hansford*, it is recognized that there must be facts which create a "substantial doubt" of a defendant's mental competence before due process requires the trial judge to order such a hearing *sua sponte.*

In the case at bar, no evidence has been put forth which, in any way whatsoever, raises a "substantial doubt" of the petitioner's mental competence, other than petitioner's own allegations, as set forth in his § 2255 petition. Without more than mere allegations, this court

**934**

has but no choice other than to deny a hearing *sua sponte*.

In light of the foregoing, it is the opinion and judgment of this court that the relief, as prayed for by Dickenson, must be denied, and the petition dismissed.

If the petitioner wishes to appeal this judgment or any part thereof, he may do so by filing with the clerk of *this* court a notice of appeal. Failure to file the notice of appeal within thirty (30) days may result in a denial of the right to appeal. The notice shall state the following:

1. The party or parties taking the appeal;

2. The judgment, order or part thereof appealed from; and

3. The court (United States Court of of Appeals for the Fourth Circuit) to which the appeal is taken.

The clerk of the court is hereby directed to send a certified copy of this opinion to the petitioner and to the respondent.