**UNITED STATES of America ex rel. Frank EARLY, Petitioner,**

v.

**Ernest MORRIS, Superintendent of the Joliet Correctional Complex, Respondent.**

No. 74 C 1777.

United States District Court, N. D. Illinois, E. D.

March 17, 1975.

Robert W. Hallock, Kirkland & Ellis, Chicago, Ill., for petitioner.

Bernard Carey, State's Atty., Cook County, William J. Scott, Atty. Gen. of Ill., Chicago, Ill., for respondent.

## MEMORANDUM DECISION

MARSHALL, District Judge.

On November 10, 1969, petitioner withdrew his plea of not guilty and entered a plea of guilty before Honorable Francis T. Delaney, Circuit Judge, Cook County, Illinois, to four indictments. Three indictments charged him with two counts of armed robbery, one count of aggravated battery and one count of unlawful use of weapons. On motion of the State the fourth indictment charging petitioner with sale of narcotics was reduced without objection to possession of narcotics. As to each count of the indictments the court admonished petitioner as to whether he knowingly and understandingly waived his right to trial by jury or the bench. Each time petitioner answered in the affirmative. The court further admonished petitioner as to the minimum and maximum sentences that could be imposed for each count,

and that each sentence could run consecutively. The parties stipulated that a factual basis existed for each plea of guilty.

In aggravation, the State cited previous felony and misdemeanor convictions. In mitigation, defense counsel asked for leniency attributing petitioner's problems to his addiction to drugs which petitioner hoped to cure. Judge Delaney then sentenced petitioner to serve in the Illinois State Penitentiary concurrent terms of not less than nine and not more than ten years for each count of armed robbery, and not less then eight and not more than ten years for aggravated battery, unlawful use of weapons and possession of narcotics. The court then advised petitioner of his right to appeal.

The following exchange formed the basis for the petitioner's subsequent state court post-conviction petition and hearing, and his present prayer for habeas corpus relief:

MR. FOWLKES: Your honor, I have a motion that the mittimus be stayed here for about 10 days and the defendant be permitted to be hospitalized in the House of Correction.

THE COURT: Mr. State's Attorney.

MR. NEVILLE: We have spoken about that previously. It has to do with Mr. Early's narcotic problem and he wishes to be hospitalized at the Bridewell for a period of 10 days in order to try and cleanse his system.

THE DEFENDANT: Yes, I would like to go over there today. Right now I am under the influence of narcotics and I would like to go over there today to kick my habit. See, I'll be sick some time around a couple of hours.

MR. NEVILLE: We·spoke about this previously and I indicated to the court at that time and Mr. Fowlkes we would have no objection to that. I suggest the mittimus be stayed for 10 days for that purpose, for him to be

sent to the House of Correction Hospital.

THE COURT: All right, the mittimus is stayed for 10 days and Mr. Early is directed—the Sheriff of Cook County is directed to confine Mr. Early in the House of Correction for hospitalization for at least 10 days in order that the drug addiction problem he has may be neutralized in some respect before the defendant would be sent to the State Penitentiary. (R. 17–19)

On January 20, 1970, petitioner filed a post-conviction petition in which he asserted that the trial court violated his constitutional rights by accepting his pleas of guilty while he was under the influence of narcotics.

On August 19, 1971, Honorable Joseph A. Power conducted a post-conviction evidentiary hearing on the State's motion to dismiss. Counsel was appointed to represent petitioner. The following is a summary of the testimony of petitioner, his wife, the assistant state's attorney, defense attorney and the trial judge at the guilty plea hearing.

Petitioner testified on direct examination that at the time of the guilty plea hearing he was a narcotic addict with a $125 a day heroin and cocaine habit. (R. 10) When petitioner was released on bond August 4, 1969, he resumed his habit with injections of heroin and cocaine, two or three times every day up to and including the date of his guilty pleas on November 10, 1969. (R. 11, 28) At 3:00 a. m. that date, petitioner smoked an opium cigarette; at 10:00 a. m. petitioner took his "daily shot of heroin along with cocaine" at his mother's house and a shot at his wife's house. (R. 12, 48–49) The guilty pleas were entered that afternoon. Petitioner testified:

THE WITNESS: . . . My wife and I came to court and I took my syringe and needle along with me to court and a bag of heroin and a bag of cocaine, in the event that I became ill.

So I did become slightly ill and went into the washroom outside of the courtroom and took my shot there, and I left the needle and the syringe in the washroom outside of the courtroom.

Q: Now, about what time was this, Mr. Early?

A: I don't know what time it was. It was somewhere near about an hour before sentencing.

MR. ROBBINS: I didn't hear that.

THE WITNESS: An hour before prison sentencing.

MR. ROBBINS: I still didn't get it.

THE WITNESS: A one hour before prison sentencing. (R. 13)

Petitioner testified that several days before he pleaded guilty he requested his attorney to arrange to have his bond revoked and have petitioner placed in a hospital for drug abuse treatment.

Petitioner recalled that his wife, mother and a child were present at the guilty plea but could not remember everyone who was present because he was high. (R. 17) Petitioner said he saw "part of Judge Delaney's face as his face and the other half of his face carried the appearance of my wife's face. A double vision is what I had seen." (R. 17, 54) Petitioner testified that he went into a "narcotic nod" during the admonishments. (R. 18)

Petitioner did not recall any communications regarding a jury trial. After pleading guilty petitioner was handcuffed and taken to the hospital for 10 days of treatment. After the hospital stay petitioner was brought back before Judge Delaney for commitment to the penitentiary. Defense counsel was not present.

On cross-examination the 36-year-old petitioner testified that he had been a drug addict for 19 years. (R. 23) In 1968, after serving 7 years and 3 months, petitioner was released from the penitentiary and began selling drugs and keeping a portion to use. (R. 25–26) Petitioner testified that he suffered withdrawal symptoms as vomiting, perspiring, aching bones and blurred vision.

On redirect examination petitioner testified that he received medication at the hospital on a daily basis which prevented vomiting and kept his bones from aching. He traced his earliest addiction treatment back to the time when at 20 years of age he was convicted of stealing a check and Judge LaBuy of this court committed petitioner to the Lexington, Kentucky drug treatment hospital for six months.

Petitioner's wife testified that on November 10, 1969, she was present in Judge Delaney's courtroom when her husband entered his pleas of guilty. Married to him since 1959, she knew for years that her husband was an addict. The witness observed that her husband was high when petitioner pleaded guilty. His wife testified that petitioner was sweating profusely and looked as though he would vomit. His eyes were "glary, you know, watery." (R. 79) The witness testified that petitioner looked this way whenever he took a "fix." In her opinion petitioner was under the influence of narcotics at the time of his guilty pleas. (R. 84)

Assistant state's attorney Richard Neville testified for the State that he recalled nothing unusual about petitioner whom he had seen in plea negotiations and before the bench about six or seven times. (R. 98) Neville recalled that petitioner told him before the pleas were entered that petitioner was a drug addict. (R. 99–100)

Neville testified that the agreement on the pleas of guilty emerged from conferences before the date of the actual pleas because the case was continued several times so that petitioner could clear up his affairs. The witness testified further:

During the time that the conferences took place I, representing the State's Attorney, and Judge Delaney in his, representing the court, indicated that we would have no objection at the

time the pleas were entered to putting, to sentencing him to the penitentiary but with a stay for a period of time so he could be sent to the Bridewell, I think, the Bridewell Hospital. (R. 104)

Neville testified that he possibly knew of the addiction more than two months before the pleas. (R. 113) He did not remember petitioner sweating or whether petitioner's eyes were red at the time of the pleas. On redirect he testified that he observed nothing unusual about petitioner when he entered his guilty plea. (R. 128)

Attorney Glenn Fowlkes testified for the State that he was a court-appointed attorney for petitioner when petitioner pleaded guilty. Fowlkes was never prepared to go to trial in the case.

Fowlkes testified that petitioner never appeared to act unusual when they met. (R. 134) When the petitioner pleaded guilty, Fowlkes did not notice anything unusual about him. Fowlkes testified that they could understand each other. (R. 138–139) When Fowlkes first came into court for the guilty plea, Fowlkes remembered that petitioner reminded him to get him to a hospital after the plea because petitioner was going to be sick. (R. 139) Fowlkes did not think that petitioner was under the influence of narcotics when he pleaded guilty. (R. 140)

On cross-examination Fowlkes testified that he received his appointment through Judge Power by way of the Chicago Bar Association's Committee on the Defense of Prisoners. Fowlkes explained that the policy of the Committee was such that if a defendant could get out on bond, he had funds to afford an attorney. Fowlkes told petitioner that he was therefore not able to represent petitioner as an indigent defendant since Fowlkes was able to get petitioner's bond reduced enough to secure his release on August 4, 1969. Fowlkes explained the conditions for his staying on the case as a Bar lawyer:

Well, I explained to Frank that if he had money he had to hire a lawyer, that insofar as the Bar Association committee was concerned I wouldn't be able to represent him, that I thought he had no defense, and that if he wanted me to stay in this case I would only on the basis that I would try to negotiate the best deal for him. But now if he wanted to fight the case on his merit, so to speak, that he would have to hire a lawyer. (R. 148)

Fowlkes felt that getting the minimum sentence reduced was a good deal. Fowlkes thought that petitioner was dissatisfied with the deal.

Fowlkes knew at the time of the pleas that petitioner was a drug addict. (R. 151) He testified that after petitioner reminded Fowlkes to get petitioner into a hospital after the pleas, Fowlkes "checked with Mr. Neville and this was part of the deal, so to speak." (R. 153) Fowlkes did not have an independent recollection of petitioner's "under the influence of narcotics" statement but testified that he was present when petitioner made the statement as reflected in the record. (R. 150)

Judge Francis T. Delaney testified that petitioner's case came before his court for the first time on June 3, 1969. (R. 159) The judge testified that "the first I heard about the narcotics was on June 3, 1969. (R. 159) The judge testified that "the first I heard about the narcotics was on the day of the plea . . . after all the pleas were completed, the aggravation, mitigation and sentence." (R. 162, 164) The judge did not remember any unusual behavior by petitioner while he was before the bench. (R. 164) After petitioner returned from the hospital and came before the judge for the issuance of the mittimus, no statements were made by petitioner to "negate anything that happened ten days before." (R. 165).

On cross-examination the judge testified that a plea conference was held in chambers on the date of the pleas. Without the transcript the judge had no

independent recollection of petitioner. (R. 169) From reading the transcript, the judge felt that "he appeared as normal as anyone else who ever appeared before me." (R. 169)

In the following exchange the judge explained why he sent petitioner to the hospital:

MR. TOOLE: Q. Now, Judge Delaney, according to the transcript you honored the defense counsel's request, or motion for stay of mittimus, to give the defendant an opportunity to cleanse the narcotics out of his system, is that right?

A. I honored the defense attorney's request for the reason that the pleas were taken, and the man had been sentenced to long terms in the penitentiary, and he had previously been out on bond, and I wasn't going to leave him be out on the street again. The mere fact that his attorney told me that would not have made any difference. He had already pleaded and was sentenced.

Q. Is that an additional reason you sent him to the House of Correction?

A. Because he had pleaded and was under four long sentences which were to run concurrent. (R. 170)

At the close of the State's evidence defense counsel Toole tried to introduce into evidence petitioner's medical records. (Respondent's Exhibit B) Judge Power sustained the People's objection on the grounds that no foundation was laid for the admission of the records since Toole decided not to call any doctor to the stand. The judge accepted the records as an offer of proof only.

Judge Power denied petitioner's petition for post-conviction relief. The judge reasoned that petitioner was in the same frame of mind while in jail negotiating a plea without using drugs as he was when he was out on bond and when he pleaded guilty. Judge Power concluded that "it didn't appear that narcotics affected your mind in any way, or even your body. . . . That's all

that is necessary for the court to do, to know that you understand that you are charged with a crime and that you know what the arrangement is on your plea, and that you agreed to it and the Court had conformed with your agreement. That's all that the law provides." (R. 223)

On December 13, 1973 the Appellate Court of Illinois, First District, affirmed the denial of petitioner's post-conviction relief. (Respondent's Exhibit C) The appellate court held that Judge Delaney did not abuse his discretion when he did not conduct a competency hearing after petitioner stated that he was under the influence of narcotics since neither the assistant state's attorney, the defendant's attorney Fowlkes nor Judge Delaney believed petitioner was under the influence when he pleaded guilty.

Petitioner Early's *pro se* petition for a writ of habeas corpus is grounded on the allegations that he was under the influence of heroin when he pleaded guilty; that his defense attorney, the prosecutor and the judge knew that petitioner was an addict; that all were informed by petitioner in open court that he was then under the influence of narcotics; that by request of counsel petitioner was sent to the hospital for 10 days for possible withdrawal symptoms; that the medical records were not admitted as proof; that after the pleas he did, in fact, suffer withdrawal at the hospital, thus, supporting his allegation that he was under the influence of narcotics. Petitioner contends that the immediate presence of heroin and cocaine in his system at the time of the pleas vitiated the competence and voluntariness of the pleas, thus requiring Judge Delaney to conduct an on-the-spot competency hearing.

On October 15, 1974, respondent filed with the United States District Court Clerk a motion for summary judgment. Respondent contends that this court is bound by the state court findings that petitioner's pleas were competent; that

petitioner knew the nature of the proceedings and that he received the bargain for which he had negotiated. Respondent urges that the full evidentiary hearing in the state court satisfied the requirements of the Habeas Corpus Act, 28 U.S.C. § 2254(d)(1)–(8).

■ Respondent's motion for summary judgment is denied because two factual questions are still unresolved: (1) whether petitioner was under the influence of heroin and cocaine (or opium) at the time he pleaded guilty, and (2) if petitioner was under the influence of narcotics, was he nevertheless competent to knowingly and understandingly waive his constitutional rights when he pleaded. Accordingly, an evidentiary hearing should be held to resolve these factual issues. 28 U.S.C. § 2254(d).

■ It is a fact that petitioner informed trial Judge Delaney, the assistant state's attorney Neville and defense attorney Fowlkes that he was under the influence of narcotics at the time he entered his pleas of guilty. As in *Hansford* v. *United States*, 124 U.S.App.D.C. 387, 365 F.2d 920, 923 (1966), the portion of the plea record quoted above demonstrates "a sufficient likelihood of incompetence to have imposed on the trial court a duty to inquire into appellant's competency." (Hansford testified at his trial that he was a long time narcotic addict and that he used drugs throughout the trial.)

The District of Columbia Court of Appeals based its decision on *Sanders* v. *United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). There the Court ruled that a hearing was necessary under 28 U.S.C. § 2255 to test a claim of incompetency based on narcotic use during trial observing:

> If anything, his [defendant's] request before sentence that the judge send him to a hospital "for addiction cure" cuts the other way. Moreover, we are advised in the Government's brief that the probation officer's report made to the judge before sentence (the report

is not part of the record in this Court) disclosed that petitioner received medical treatment for withdrawal symptoms while he was in jail prior to sentencing. *Sanders* v. *United States*, 373 U.S. at 20, 83 S.Ct. at 1079.

The Court, therefore, found merit to Sanders' claim of incompetency and remanded for a hearing. Similarly, petitioner requested medical treatment "to kick my habit" before his mittimus issued and petitioner received 10 days of treatment for narcotic withdrawal.

■ Respondent argues the post-conviction evidentiary hearing cured the defect at the guilty plea hearing in that the post-conviction hearing was, in effect, a competency hearing where petitioner was found to have been competent at the guilty plea stage. His petition for post-conviction relief was, therefore, denied. The Illinois Appellate Court affirmed the denial basing its judgment in part on the testimony of the prosecutor, defense counsel and trial judge "that they did not believe the defendant was under the influence of narcotics at the time he changed his pleas to guilty." (Respondent's Exhibit C, p. 7)

■ Clearly, the lay observations of these three officers of the trial court alone are not dispositive of the first issue as to whether petitioner was under the influence of narcotics when he pleaded guilty. In *Hansford, supra,* the court followed *Pate* v. *Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) when it said:

> While his demeanor at trial may be a relevant factor, it is by no means the only one and it cannot obviate the need for a hearing on his competence. This reasoning applies with particular force to a defendant who may be under the influence of narcotics, since the symptoms and effects of an acute brain syndrome produced by narcotics will often not be apparent to a lay observer, even a judge, but only to an expert. Even then a careful examina-

tion would seem necessary to determine the extent to which the defendant's memory and other rational faculties have been impaired by the drugs. 365 F.2d at 924.

In a footnote the court continued:

Further, because lay observations will often be inaccurate, the fact that defense counsel did not think defendant incompetent, although of evidentiary value, can never be dispositive. 365 F.2d at 924, n. 11.

Significantly, in the instant case, no medical records or expert medical testimony went into evidence at the post-conviction hearing. Petitioner's medical records, which have been brought here, were offered as evidence but the State court sustained an objection to them on the ground that no foundation had been laid. These records, if received in evidence, will show that petitioner's condition was diagnosed as narcotic addict withdrawal.

Cases bearing on the factual issues presented here have frequently included expert medical testimony to support or defeat the defendant's claim of incompetency due to the ingestion of narcotics during the trial or before a plea. *See United States* v. *Goodman,* 432 F.2d 75 (5th Cir. 1970); *Pate* v. *Robinson, supra; Hansford* v. *United States, supra.* In fact, in a case cited by respondent, the Second Circuit Court of Appeals placed emphasis on the fact that newly discovered hospital records of the defendant might have warranted an evidentiary hearing on whether the use of heroin prior to, during and subsequent to defendant's trial resulted in the mental incapacitation of the defendant. *O'Neil* v. *United States,* 486 F.2d 1034, 1036 (2d Cir. 1973). Case law, then, supports the conclusion that something more than the lay opinion of two lawyers and a trial judge that petitioner was competent to enter a guilty plea is required to determine the competency of an allegedly heroin-ridden defendant.

As to the second issue before this court, the court in *Hansford* pointed out the following:

This *is* not, of course, to say that a defendant under the influence of narcotics is necessarily incompetent. . . . The effects of narcotic use will vary depending on the amount of drugs taken, the degree of tolerance developed by the individual, the idiosyncratic reaction of the person to the drugs. For this very reason, only by a hearing can it be determined whether any particular defendant is incompetent because of his use of drugs. 365 F.2d at 923.

Therefore, petitioner might have been under the influence of narcotics but his competency might have been unaffected or even enhanced rather than weakened given petitioner's long history of drug addiction. This, again, is a question of fact to be resolved by an evidentiary hearing which has not been satisfactorily determined in the State post-conviction proceeding.

Respondent's motion to dismiss is Denied. Robert W. Hallock of the Chicago Bar is appointed to represent petitioner. The cause is continued to April 8, 1975 at 10:00 a. m. for report on status and to set for trial.