## UNITED STATES of America ex rel. Frank EARLY, Petitioner,

v.

## Ernest MORRIS, Superintendent of the Joliet Correctional Complex, Respondent.

### No. 74 C 1777.

United States District Court, N. D. Illinois, E. D.

Dec. 23, 1975.

Robert W. Hallock, Kirkland & Ellis, Chicago, Ill., for petitioner.

Bernard Carey, State's Atty., Cook County, William J. Scott, Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM DECISION

MARSHALL, District Judge.

An evidentiary hearing has now been held in this habeas corpus proceeding pursuant to our memorandum decision of March 17, 1975. 396 F.Supp. 827 (1975). It is clear from the evidence that facts were made known to the state trial court judge which showed a strong probability of petitioner's incompetence to plead guilty, making necessary, under the due process clause of the fourteenth amendment, a hearing to determine petitioner's competency. The failure to hold that hearing vitiates petitioner's plea because of the "difficulty of retrospectively determining an accused's competence to stand trial" or to plead guilty. *Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1965).

Furthermore, despite the difficulty inherent in such a retrospective inquiry, we are persuaded by the evidence adduced here that petitioner was in fact under the influence of heroin and incompetent to plead guilty under the due process clause of the fourteenth amendment.

*The facts made known to the state trial judge*

Before hearing the plea in open court, the state trial judge held an "in camera" conference with counsel. (Tr. of plea, 13, 15, 16.) During this conference the judge was advised by petitioner's counsel that petitioner had taken some narcotics and was afraid he was going to be ill.

During the plea proceedings, the judge was advised, on the record, that "some of [petitioner's] difficulty stems from his addiction to drugs. He hopes to rid himself of this affliction." Tr. of plea, 14.

Thereafter, near the conclusion of the plea hearing, the judge was advised by petitioner's counsel of his wish to be hos-

pitalized. The prosecutor concurred that the request "has to do with [petitioner's] narcotic problem and he wishes to be hospitalized . . . in order to try and cleanse his system." (*Id.* 18.) Petitioner then stated, "Right now I am under the influence of narcotics and I would like to go over there today and kick my habit. See, I'll be sick some time around a couple of hours." (*Ibid.*) To this the judge responded that petitioner would be hospitalized "in order that the drug addiction problem he has may be neutralized in some respect before [petitioner is] sent to the State Penitentiary." *Id.* 19.

It is clear that the state court was advised that petitioner was, at the time of his plea, under the influence of narcotics. The euphoria, sedation, self-absorption, and indifference and the impairment of orientation, memory, comprehension and judgment which attend heroin usage are matters of common knowledge. *Hansford v. United States,* 124 U.S.App.D.C. 387, 365 F.2d 920 (1966). Judges cannot close their eyes to these facts in their haste to accept guilty pleas. When circumstances the likes of those shown here are communicated to a judge, due process of law recognizes that a meaningful inquiry be made to determine the competence of the accused to enter a knowing, intelligent and voluntary plea. *Pate v. Robinson, supra.*

We recognize that the conclusion we have reached will impose additional burdens of care on judges who are requested to accept guilty pleas. And these burdens will not be inconsequential in light of the extremely high percentage of criminal charges which culminate in such a plea and the high coincidence between drug addiction and criminal behavior. But those burdens are, we submit, a small price to pay for the preservation of the constitutional rights of the accused, the integrity of the judicial process and the meaningfulness of our correctional system. Certainly we would not be true to the Constitution were we to condone the acceptance of a guilty plea from one whose perceptions were, at the time of the plea, distorted by drugs. And if, as we profess, the judicial system is bottomed on truth, we could not in good conscience find that a plea was knowingly, intelligently and voluntarily made in such circumstances. Nor can we expect the correction process to have a meaningful impact on one who, because of the influence of drugs, has a distorted recollection of the proceedings which culminated in his adjudication.

Respondent argues that this result gives the addict on bail the ability to frustrate the judicial process by self-inflicted drug influence at the time of the plea hearing. But bail contemplates that the accused will present himself to the court not only physically but in such condition as to permit the court to proceed with its business. The abuse of the privilege of bail which respondent seems to predict can, we are confident, be dealt with by the judiciary.

Furthermore, we do not hold that drug addiction *ipso facto* renders an accused incompetent. Drug addiction is an illness which can render a person incapable of transacting the important affairs of life for periods of time following drug usage. In light of that fact and on the record here, the state court was under a constitutional duty to inquire into petitioner's competence before it accepted his plea. Its failure to do so vitiates the plea and the conviction based thereon.

### The additional facts of incompetence

Immediately following the entry of his plea, petitioner was hospitalized. The hospital records show he went into withdrawal in the evening. He was vomiting and sweating profusely. He had had his last fix in the morning. He had a heroin habit, at the time of his plea in 1969, of $100 to $150 per day.

Petitioner's state court counsel, who was called by respondent, testified that in his opinion petitioner was competent. But he also testified that when he first saw petitioner at the courthouse on the day of the plea, petitioner told him he had just taken some heroin, thought he was going to be ill and wanted to go to

the hospital. Petitioner's counsel believed he was under the influence of a narcotic but he did not believe it influenced his plea. As previously noted, he urged that petitioner be hospitalized.

Petitioner's own testimony (corroborated by his wife) was credible and particularly so in light of his conceded narcotic addiction and the reports of his condition reported to the court and by the hospital on the day of his plea. Thus, petitioner testified to substantial narcotic and alcohol usage during the morning of the day of his court appearance and the injection of two bags of heroin in the washroom of the courthouse just after the lunch recess and immediately prior to the entry of his plea. As a consequence, he testified, he did not comprehend the plea proceedings; he thought they were intended to hospitalize him following which he would stand trial.

Respondent argues that the transcript of the plea proceedings contradicts petitioner because his answers—"yes"—to a series of complex, leading and suggestive questions by the court dealing with the consequences of his plea, were appropriate and timely. While petitioner's answers do not corroborate his present contention of incompetence, neither do they contradict it. Judges, like jurors, should weigh evidence in the light of their own experiences in life. So viewed, we find the rote answers given by petitioner of slight, if any, probative value.

Respondent also urges that the state court judge's testimony that petitioner was competent should be credited. But Judge Delaney candidly acknowledged a lack of any present recollection of petitioner or his plea. In these circumstances he added little to the transcript of proceedings which, we find, corroborate rather than contradict petitioner.

Finally respondent points to the testimony of the prosecutor who handled petitioner's cases. He testified that petitioner was competent, had participated in the earlier plea negotiations, had reopened the negotiations the day of the plea and had received the sentence he

had bargained for. He rejected any notion that petitioner expected to defend the cases after hospitalization and did not know the day of the plea that he was going to plead guilty.

We are confident that Mr. Neville would not have knowingly participated in a guilty plea proceeding with a person under the influence of drugs any more than Judge Delaney or petitioner's counsel, Mr. Fowlkes, would. But Mr. Fowlkes' testimony that petitioner told Mr. Neville that he (petitioner) had taken some narcotics and was going to be ill is uncontradicted and Mr. Neville did join in the request that petitioner be hospitalized because of his "narcotic problem." Furthermore, Neville's testimony of his dealing with petitioner the day of the plea does not contradict petitioner's testimony that early in the afternoon, just before Mr. Fowlkes arrived at the courtroom, he injected a double quantity of heroin in the washroom.

The case is not free from doubt. But when all of the evidence is considered, we are convinced that petitioner was in fact acutely under the influence of narcotics at the time of his plea and was incompetent to enter the plea. We note that our conclusion is supported by the opinions of petitioner's two expert witnesses who testified on the basis of the evidence we have summarized. That expert testimony was not contradicted by respondent.

In light of the foregoing, which, together with our memorandum of March 17, 1975, will stand as our findings and conclusions under Rule 52(a) Fed.R. Civ.P., the judgments of the Circuit Court of Cook County Illinois—Criminal Division entered on the invalid pleas must be set aside.

There remains a question of the immediacy of the relief to be granted petitioner. He has now been incarcerated for 6 years, 1 month and 13 days on his invalid guilty pleas and resultant concurrent sentences of 9 to 10 years. The record does not suggest that he will not respond to process should the State of Illinois elect to reprosecute him on these

charges, which, of course, it is free to do. In these circumstances, we have concluded that petitioner should be ordered released immediately from his confinement pending appeal by respondent or retrial by the State and an order to that effect has been entered.